## UNITED STATE DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**RONDA SCOTT,**

     **Plaintiff,**

**v.**                                                            **CASE NO.:**

**ADVANCED PHARMACEUTICAL**
**CONSULTANTS, INC., and CENTURION OF**
**FLORIDA, LLC.**

     **Defendants.**

_____/

## COMPLAINT

Plaintiff, RONDA SCOTT, sues Defendants ADVANCED

PHARMACEUTICAL CONSULTANTS, INC., and CENTURION OF

FLORIDA, LLC., and alleges as follows:

### JURISDICTION AND VENUE

1.    This action for monetary damages and for other equitable and

ancillary relief is brought pursuant to 31 U.S.C. §3730(h) (hereinafter

Federal False Claims Act – Retaliation); under the Florida Private

Whistleblower Act, §448.103, Florida Statutes; under the Florida

Public Whistleblower Act, § 112.3187, Florida Statutes; and under the common law of the State of Florida.

2.   The United State District Court of the Northern District of Florida has jurisdiction of the federal claims under 28 U.S.C. §§ 1331; jurisdiction over the state claims arises under 28 U.S.C. § 1367.

## ADMINISTRATIVE PREREQUISITES

3.   All conditions precedent to bringing this action have occurred.

## PARTIES

4.   Plaintiff, Ronda Scott ("Scott" or "Plaintiff"), is a resident of Lowndes County, Georgia.

5.   Defendant, Advanced Pharmaceutical Consultants, Inc. ("APC"), is a Florida corporation, licensed and authorized to conduct business in the State of Florida and doing business in the Northern District of Florida.

6.   Defendant, Centurion of Florida, LLC. ("Centurion"), is a Missouri corporation, licensed and authorized to conduct business in the State of Florida and is doing business in the Northern District of Florida.

7.   APC is a subcontractor for Centurion.

## STATEMENT OF FACTS

8.   APC employed Plaintiff as the Regional Manager and Consultant Pharmacist.  As part of her job, she provided supervisory direction for

pharmacies and monitored regulatory and compliance activities for
facilities covered by APC's contracts.

9. APC had a contract with Centurion to audit Florida correctional
institutions, for which Centurion had a contract with the State to
provide medical services for inmates.

10. Plaintiff was highly regarded by APC.

11. APC promoted Plaintiff soon after hiring her, evaluated her positively,
and praised her work.

12. APC made Plaintiff the Regional Manager and Consultant Pharmacist
and tasked her with auditing Florida correctional institutions for
Centurion.

13. Centurion was tasked with providing treatment to inmates with
Hepatitis C, including the use of a drug named Epclusa. Epclusa is an
effective treatment option for some variations of Hepatitis C but is
expensive.

14. Plaintiff, in executing her job, observed, reviewed, and documented
findings and/or made professional recommendations for patient
quality care, or processes improvement.

15. Centurion sought to increase its earnings and to cut costs by cutting
corners in its practices, particularly on medications.

16.     APC desired to maintain its contract with Centurion.

17.     Plaintiff objected only when Centurion's practices jeopardized patient
        safety or violated the law, regulations, or court order.

18.     For example, Plaintiff performed an inspection at Jackson
        Correctional Institution on May 16, 2018. Plaintiff found multiple
        serious code violations.

19.     Plaintiff's observations included the replacement of licensed
        personnel with unlicensed personnel to manage the daily operation of
        the pharmacy, the use of unlicensed personnel to dispense drugs and
        counsel inmates about medications, and unlicensed personnel being
        left unsupervised within the pharmacy area, with the appropriate
        supervisory staff being generally absent from the facility. These
        actions are unlawful and subject to disciplinary action under §§
        456.072(1)(a-b) & (j), 464.016, 465.016(1)(c) and 465.023(1)(c), Fla.
        Stat.

20.     Notably, Plaintiff also documented serious issues with hepatitis
        treatment and monitoring, including Epclusa not being given, a lack of
        lab monitoring or follow-up, and a lack of documentation for why the
        Epclusa was not given. This is a violation of § 499.01, Fla. Stat.

21.     Plaintiff subsequently documented these violations and discussed her
        findings with Jackson CI's Health Services Administrator (HSA)
        Shelby Mixon because Director of Nursing (DON) Dorothy Stewart
        was absent on the day of inspection.

22.     On May 17, 2018, Plaintiff was placed on a three-way call with
        Centurion's State Clinical Pharmacy Director Shirly Fahmy and
        Plaintiff's immediate APC supervisor Andrea Mason. Both Fahmy
        and Mason tried to persuade Plaintiff that her inspection was
        inaccurate, to coerce her into omitting her findings, and to submit an
        amended report so as to "save the [State of Florida] contract [with
        Centurion]."

23.     On May 18, 2018, Fahmy and Mason directed Plaintiff to conceal her
        findings relating to Jackson CI from the State. This is a violation of
        §456.072, Fla. Stat. Scott proceeded to contact the Florida Department
        of Health (FL DOH) with her findings.

24.     Plaintiff, though opposed to submitting an amended report, complied
        with Fahmy and Mason's directive on May 21, 2018.

25.     Upon review of the final amended report, Plaintiff found that DON
        Stewart had falsified the amended report by signing the report as if

she had been present on the day of the inspection. This action is unlawful pursuant to § 465.016(1)(j), Fla. Stat.

26. To further conceal Plaintiff's findings, Fahmy and Region 1 Director of Nursing (DON) Lisa Barton failed to execute the customary corrective action plan to remedy and/or object to an inspector's findings. This is a violation of Fla. Admin. Code. R. 64B16-27.300.

27. This marked the beginning of a pattern - Plaintiff would provide a recommendation or conduct an inspection and document all of her findings including violations, Fahmy and Mason would come behind Plaintiff and take action to curb any references to Plaintiff's recommendation or findings of violations, then Plaintiff would contact FL DOH regarding said behavior.

28. This pattern was replicated in June of 2018 with Plaintiff providing a medication recommendation to Santa Rosa Correctional Institution and Fahmy coming behind Plaintiff to "correct" Plaintiff's supposed mistake.

29. Things reached a climax after Scott conducted a monthly consultant pharmacist inspection at Gulf Correctional Institution's Annex Unit on August 24, 2018.

30.    In July of 2018, the Pharmacy and Therapeutics Committee – where
       both FL Department of Corrections staff and Centurion staff
       participated - held a meeting where it was decided that Epclusa was to
       be documented via the narcotic account log. This decision was not
       present in the minutes for this meeting nor was the procedural
       mandate, which stated that no form revisions, change, or alternations
       are allowed without approval from FL DOH's Office of Health
       Services, followed. Fahmy subsequently failed to notify Plaintiff that
       facilities would be treating Epclusa as a narcotic and to include
       documentation on narcotic accounting log forms.

31.    Prior to Plaintiff's inspection of Gulf CI, Mason had forwarded an
       email correspondence between Mason and Fahmy to Plaintiff on
       August 13, 2018. In this email thread, Fahmy wrote, "We [Centurion]
       had also mentioned that she [Plaintiff] does not need to be concerned
       with anything relating to hepatitis c treatment. Before advising the
       sites of any process changes or documenting a finding, please have
       [Plaintiff] call and ask either one of us [Fahmy or Mason]."

32.    On August 24, 2018 at Gulf CI, Plaintiff observed that Epclusa was
       stored in a crash cart. This differed wildly from other facilities, where
       Epclusa was stored either with controlled substances or was

maintained in a separate mounted container, like a controlled substances box.  This action constituted a violation, pursuant to Fla. Admin. Code. R. 64B.16-28.120 (2019).

33.  Plaintiff subsequently documented her findings, including that Epclusa was not being properly stored, and provided her recommendation for an alternate form to be used for Epclusa drug monitoring before she notified Gulf CI Annex's DON Tanya Thomas.

34.  Pharmacies are subject to particular formalized procedures. Any procedural alterations, changes, or modifications were to be approved by the FL DOH's Office of Health Services. At this time, Plaintiff made note of the unapproved procedure as protocol dictated until further "formalized" clarification was received.

35.  Later that day, Fahmy and Mason directed Plaintiff to amend all reports that documented hepatitis treatment, monitoring, and storage of Epclusa. This is a violation of §456.072, Fla. Stat.

36.  Plaintiff did as directed and amended the reports.

37.  At that time, Fahmy and Barton recommended that Plaintiff be replaced in all Region 1 correctional facilities, without the consult of higher level management from Centurion.

38. On August 28, 2018, Plaintiff verbally notified Mason that Plaintiff had repeatedly contacted FL DOH since May of 2018 regarding the pattern of interference with her consultant pharmacist inspections. Mason demanded to know the FL DOH investigator's name.

39. On this same day, Plaintiff filed a formal whistleblower complaint to FL DOH about Fahmy via a Health Care Provider Complaint Form. Mason then placed Plaintiff on a three-way call with APC's Human Resources (HR) department. Plaintiff discussed discrimination, retaliation, and the pattern of being targeted by Fahmy and Barton; however, neither Mason nor HR took action regarding Plaintiff's complaints.

40. The next day, Plaintiff received a disciplinary notice from Mason, which also acted as a 'final warning' from APC. The disciplinary report referenced a "closed issue" at Jackson CI, though Plaintiff had complied with Fahmy and Mason's directive to amend her report in May of 2018, and mischaracterized Plaintiff's inspection of Gulf CI on August 24, 2018.

41. This disciplinary report against Plaintiff also noted that "Client [Centurion] expressed the idea for possible removal of [Plaintiff]," before offering that "Client [Centurion] has agreed to give [Plaintiff]

one more chance in the month of September… [but] has firmly

expressed that if there is one more occurrence related to unsatisfactory

work performance or unprofessionalism, they will want [Plaintiff]

removed from all prisons." Finally, the report posited that prison

inspections were part of Plaintiff's regional manager position,

accounting for "approximately 50% workload," and that a reduction

of prison accounts could result in a reduction of pay.

42.    Plaintiff also found that she was denied access to all work email

communications, despite requesting access.

43.    On the morning of August 30, 2018, Plaintiff contacted Brian Bulfer,

the founder and owner of APC, to make him aware of the

deteriorating situation with Mason and to request more time to

complete the required prison audits as well as additional time to

review, sign, and respond to the unexpected disciplinary report

Plaintiff had received from Mason.

44.    Later that day, Bulfer responded to Plaintiff. He posited that "it is the

prisons that are the cause of concern With [sic] respect to some

findings you report… We have not expereinced [sic] any issues for a

long time so this is surprising… Just understand that the client

[Centurion] seems to have a concern so we want you to-be [sic]

aware… Centurion likes us to stick to the script – if there is an issue
that warrant more attention; run it by [Mason] prior to placing it in a
report." He further instructed Plaintiff that "likely this will blow over
and they [Centurion] are willing to work with us. Understand – There
is nothing more to this then correction what is being reported on the
form for now – kind of like a balancing act where we are effective but
not crossing into some area not part of our responsibilities."

45.    On the morning of September 4, 2018, Plaintiff was sent an email
from Mason to inform Plaintiff that Centurion had requested that
Plaintiff not return to the prisons. This email stated that due to
"unsatisfactory inspection reports (job performance) and upsetting the
client (professional misconduct), the client (Centurion) does not want
you to inspect prisons any longer."

46.    As of September 4, 2018, Plaintiff was removed from Jackson CI and
terminated from the consultant pharmacist position in all correctional
facilities within Region 1. APC also directed Plaintiff to not contact
anyone from the correctional institutions.

47.    APC subsequently fired Plaintiff on September 10, 2018.

48.    Plaintiff has found it necessary to retain counsel to vindicate her rights
in this matter.

<u>**COUNT I – 31 U.S.C. § 3730 (h)**</u>
**FEDERAL FALSE CLAIMS ACT - RETALIATION**
**(against Centurion)**

49.  Plaintiff realleges paragraphs 1 through 48.

50.  Centurion was the recipient of federal funds.

51.  Centurion and APC maintained a contractual relationship with each other, where APC provided auditing services and monitored activities involving the expense of federal funds to Centurion.

52.  Plaintiff believed, in good faith, that Centurion was either not performing the functions for which it was billing the government or was performing these functions in such an inadequate fashion so as to constitute fraud on the government.

53.  When Plaintiff reported these subpar performances, Centurion and APC took action against her.

54.  Defendants terminated Plaintiff for complaining about unlawful policies and practices that were endangering the health and safety of the public.

55.  Centurion exercised the right, directly or indirectly, to fire Scott or modify her employment conditions at APC. For example, Centurion was able to order Scott's firing.

56. The foregoing actions of Centurion constitute retaliation against Plaintiff in violation of the Federal False Claims Act, 31 U.S. C §§3721 *et. seq*.

57. Plaintiff has suffered damages because of Centurion's actions.

### COUNT II - §448.101-105, FLA. STAT.
### FLORIDA PRIVATE WHISTLEBLOWER ACT
### RETALIATION
### (against both Defendants)

58. Plaintiff realleges paragraphs 1 through 48.

59. The foregoing actions of Defendants constitute retaliation against Plaintiff in violation of the Florida Whistleblower Act, §440.101-105, Fla. Stat.

60. Plaintiff objected to and refused to participate in practices which are in violation of several laws, rules, and regulations, some of which are specified above.

61. Defendants terminated Plaintiff in retaliation for complaining about unlawful policies and practices that were endangering the health and safety of the public.

62. APC, particularly the officials of its Region 1, made the decision to succumb to the threats of Centurion and fire Scott for her protected conduct.

63.   The officials of APC, particularly, oversaw the circumstances and conditions of Scott's employment at APC.

64.   Centurion exercised the right, directly or indirectly, to fire Scott or modify her employment conditions. For example, Centurion was able to order Scott's firing.

65.   Plaintiff has suffered damages because of the Defendants' actions.

## COUNT III – §112.3187-31895, FLA STAT.
## FLORIDA PUBLIC WHISTLEBLOWER'S ACT
### (against both Defendants)

66.   Plaintiff realleges paragraphs 1 through 48.

67.   Plaintiff meets the definition for "employee" as defined in §112.3187(3)(b), Fla. Stat.

68.   APC was Plaintiff's formal employer.

69.   Centurion was Plaintiff's functional joint employer.

70.   Centurion, in maintaining a contractual agreement with the State of Florida to provide healthcare services to inmates, is an independent contractor as defined in §112.3187(3)(d), Fla. Stat.

71.   Plaintiff reported and disclosed violations of state law and gross neglect of duty, which created a substantial and significant danger to the public's health, and other acts specifically outlined in §112.3187(5), *et. seq.*, Florida Statutes by Centurion and APC.

72.    After providing information as well as reporting these matters as related more fully above, Plaintiff was the victim of retaliatory actions as set forth more fully above, including her sudden discharge.

73.    These actions were taken against Plaintiff after Plaintiff objected to and/or reported matters that Plaintiff reasonably suspected were and/or actually were incidents of gross misconduct and violated state law within Centurion.

74.    These reports were conveyed in writing and/or made to supervisors and/or other persons within Centurion's chain of command who could remedy the violations. After reporting these matters, adverse action was taken against Plaintiff, including, without limitation, sudden discharge from her position.

75.    Under §112.3187(4), Fla. Stat., Centurion and APC are prohibited from taking adverse personnel action against persons like Plaintiff, who disclosed the types of information Plaintiff did. Under §112.3187(3)(c), "adverse personnel action" is defined as "the discharge, suspension, transfer or demotion of any employee or the withholding of bonuses, the reduction in salary or benefits, or any other adverse action taken against an employee within the terms and conditions of employment or independent contractor."

76.   Plaintiff maintains that the actions of all employees within Centurion who affected her employment adversely did so in retaliation against her for "whistleblowing" activities.

77.   As a direct and proximate results of the actions taken against her by Defendants, Plaintiff has suffered injury, including but not limited to future wage losses, loss of benefits, and other tangible and pecuniary damages as well as intangible damages. These damages have occurred in the past, are occurring at present, and will occur in the future.

78.   Plaintiff was granted a right to sue per the Florida Commission on Human Relation's Notice of Termination of Investigation, dated October 30, 2019, under §112.3187(8)(a), Fla. Stat.

## COUNT IV -.
## INTENTIONAL INTERFERENCE WITH
## ADVANTAGEOUS BUSINESS RELATIONS
### (against Centurion)

79.   Plaintiff realleges paragraphs 1 through 48.

80.   The foregoing actions of Defendant Centurion constitute intentional interference with advantageous business relations.

81.   Plaintiff had a business relationship with APC, under which she had legal rights

82.   Defendant Centurion intentionally and unjustifiably interfered with this relationship.

83.     Plaintiff has suffered damages because of Defendant Centurion's

actions.

## **PRAYER OF RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a)      that process issue and this Court take jurisdiction over this case;

b)      judgement against Defendants and for Plaintiff awarding

compensatory damages on all Counts for the Defendants' violations of

law enumerated herein;

c)      judgement against Defendants and for Plaintiff permanently enjoining

Defendant from future violations of law enumerated herein and

reinstatement for the Plaintiff, remedying all benefits of which

Plaintiff has been unlawfully deprived;

d)      prejudgment interest;

e)      judgement against Defendants and for Plaintiff awarding Plaintiff her

attorney's fees and costs;

f)      punitive damages on all claims on which such damages may be

presently asserted and leave to amend to plead punitive damages upon

a proper showing for those claims on which such showing may be

required;

g)      all equitable relief that is allowed by law;

h)      such other and further relief as is appropriate.

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted, this 27th day of December, 2019.

*/s/Richard E. Johnson*
Richard E. Johnson, Bar No 858323
LAW OFFICE OF RICHARD E. JOHNSON
richard@nettally.com
314 West Jefferson Street
Tallahassee, Florida 32301
Telephone: (850) 425-1997
Facsimile: (850) 561-0836